1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    CRAIG WILSON,

11              Petitioner,                    2: 05 - cv - 0950 - JAM TJB

12        vs.

13    DWIGHT C. ELY, Judge of the Superior
      Court, County of Solano, State of
14    California

15              Respondent.              ORDER, FINDINGS AND

16    _____/    RECOMMENDATIONS

17

18                              I.  INTRODUCTION

19         Petitioner is proceeding with a counseled application for writ of habeas corpus pursuant

20    to 28 U.S.C. § 2254.  Following a 2003 jury trial, Petitioner was convicted of resisting,

21    obstructing or delaying a peace officer in violation of California Penal Code § 148(a)(1) and

22    obstructing a thoroughfare in violation of California Penal Code § 647c.  The court suspended

23    imposing sentence and placed Petitioner on summary probation for three years.  Petitioner was

24    also ordered to pay a $850.00 fine and perform 100 hours of community service.

25         Petitioner raises several claims in his federal habeas petition; specifically:  (1) the noise

26    ordinance that Police Officer Carella ("Carella") enforced is overly broad and unconstitutional

                                             1

thereby causing Carella to not be in the performance of his duties when he detained Petitioner

("Claim I"); (2) Petitioner's conviction under § 148(a)(1) was an unconstitutional restraint on his

First Amendment rights because Petitioner was only speaking out against the labor conditions

and grievances he had with the school board ("Claim II"); (3) Petitioner's convictions violated

his due process rights because (a) Carella was not in the performance of his duties when he

arrested Petitioner due to the unconstitutionality of the local noise ordinance so that there was no

competent evidence to support his convictions; (b) Carella lacked probable cause to arrest

Petitioner; and (c) there was no evidence of malice to support the § 647c conviction (collectively

"Claim III"); (4) the trial court violated Petitioner's Sixth Amendment right to present a defense

when it (a) refused to instruct the jury that Carella was not in the performance of his duties and

(b) prevented the jury from considering whether Petitioner acted with malice to support the §

647c conviction (collectively "Claim IV"); (5) the trial court violated Petitioner's due process

rights and right to present a defense when it refused to instruct the jury on the entire language of

the noise ordinance that Carella was enforcing ("Claim V"); (6) the trial court violated

Petitioner's right to confront a witness by precluding attempts to expose the witness' bias

("Claim VI"); and (7) the trial court violated Petitioner's right to impeach Carella with evidence

that he had fabricated a police report against another teacher ("Claim VII").  For the foregoing

reasons, it is recommended that the habeas petition be denied.[1]

## II.  FACTUAL BACKGROUND

This case arises out of a series of events that took place during the morning hours of June

14, 2001 at the Academy High School (hereinafter the "School") in Fairfield, California.  Carella

was dispatched to the School regarding a protesting teacher blocking the School's entry and exit.

---

[1] Petitioner requests oral argument on his Petition.  The facts presented in the papers and submitted by the parties as well as the record are sufficient to determine whether Petitioner is entitled to federal habeas relief.  Petitioner has not shown that there are uniquely complex legal or factual issues that are not sufficiently described in the papers which would require oral argument.

1  (See Reporter's Tr. at p. 17.)[2]

2      Ms. Joanne Acosta testified at trial that she was a counselor at the School.  She stated that

3  there was a teacher's union strike at the school.  Petitioner was picketing along with other

4  teachers and laid down in front of Ms. Acosta's car when she turned into the driveway.  (See id.

5  at p. 80.)  Petitioner laid in front of her car for a few minutes which caused traffic to back up and

6  be blocked along the road.  (See id. at p. 83.)  Ms. Acosta testified that Petitioner eventually

7  moved over which allowed her to pull into the parking lot.  (Id.)  This incident was confirmed by

8  other witnesses' at trial including the School principal Gwendolyn Lawton.

9      Upon arriving at the School, Carella went to speak to Ms. Lawton.  He observed the

10  Petitioner speaking "strike jargon" into a megaphone.  (See id. at p. 18.)  After speaking briefly

11  with Ms. Lawton, Carella approached the Petitioner.  At trial, Carella testified that he was going

12  to issue a warning about blocking the road after what Ms. Lawton had reported to him as well as

13  warn him about using the megaphone.  (See id. at p. 19.)  Carella stated that the use of the

14  megaphone violated city ordinance § 12.9(c) since Petitioner did not have a permit to use the

15  sound amplification equipment.  (See id. at p. 20.)  Petitioner continued to use the megaphone

16  after Carella spoke to him about no longer using the megaphone.  After Petitioner continued its

17  use, Carella attempted to grab the megaphone from Petitioner.[3]   (See id. at p. 23.)  Petitioner fell

18  to the ground.  Carella then snatched the megaphone and put it in his police cruiser.  (See id. at

19  24.)  Upon returning to Petitioner, Petitioner remained on the ground blocking the sidewalk and

20  driveway.  (See id. at p. 29.)  Eventually, several officers were required to pick up Petitioner to

21  move him into the police cruiser.  (See id. at p. 32-33.)  It was estimated that from the time

22  Carella arrived at the scene to the time that they placed Petitioner in the police cruiser was

23

24      [2] The Reporter's Transcript of the trial was lodged as Exhibit 3 by the Respondent to the
    Answer and filed with this Court on August 21, 2006.

25

26      [3] At trial, Petitioner testified that Carella did not speak to him before grabbing the
    megaphone.  (See Reporter's Tr. at p. 236.)

1   approximately thirty minutes.  (See id. at p. 40.)

2       Petitioner was arrested for blocking a thoroughfare in violation of California Penal Code

3   § 647c.[4]  Carella testified that "he was blocking the sidewalk right in front of [Carella]" and "was

4   lying on the eastern portion of that dip blocking the vehicles from making the left-hand turn from

5   East Tabor into the entrance of the school."  (See Reporter's Tr. at p. 26, 27.)  Petitioner was also

6   arrested for using the megaphone without a permit in violation of the City of Fairfield Municipal

7   Ordinance § 12.9.  Additionally, Petitioner was arrested for willfully resisting, delaying or

8   obstructing a peace officer in the discharge of his duties in violation of California Penal Code §

9   148(a)(1).[5]

10                              III.  PROCEDURAL HISTORY

11      A jury trial convened in 2003 on two misdemeanor charges, (§§ 148(a)(1) and 647c of the

12  California Penal Code).  Petitioner was not tried on violating the noise ordinance.  The

13  prosecution presented several witnesses including Carella, Ms. Acosta, Ms. Lawton, Officer Paul

14  Bockrath (who arrived at the School after Carella) and Mr. Leonard DeVoto and Mr. Charles

15  Fraga who witnessed the incident involving Petitioner and Ms. Acosta.  Petitioner testified in his

16  own defense and also presented the testimony of two teachers who were at the scene picketing

17  ───────────────

18      [4] California Penal Code § 647c states:

19          Every person who willfully and maliciously obstructs the free
            movement of any person on any street, sidewalk, or other public
20          place or on or in any place open to the public is guilty of a
            misdemeanor.
21          Nothing in this section affects the power of a county or a city to
            regulate conduct upon a street, sidewalk, or other public place or
22          on or in a place open to the public.

23      [5] California Penal Code § 148(a)(1) states:

24          Every person who willfully resists, delays, or obstructs any public
            officer, peace officer . . . in the discharge or attempt to discharge
25          any duty of his or her office or employment, when no other
            punishment is prescribed, shall be punished by a fine not exceeding
26          one thousand dollars ($1,000), or by imprisonment in a county jail
            not to exceed one year, or by both that fine and imprisonment.

                                        4

1   with Petitioner on the morning of June 14, 2001.

2   The jury found Petitioner guilty of the two misdemeanors.  After being sentenced to three

3   years probation, Petitioner appealed his convictions to the Superior Court of California, County

4   of Solano, Appellate Department.  On March 12, 2004, that court affirmed the judgment without

5   opinion.  Subsequently, on April 23, 2004, that court also denied Petitioner's application for

6   certification of cause to the California Court of Appeal, First Appellate District.

7   In August 2004, Petitioner filed a petition for writ of habeas corpus in the California

8   Court of Appeal, First Appellate District.  Among the claims raised in that state habeas petition

9   were the claims that Petitioner raises in this federal habeas petition.  The California Court of

10   Appeal summarily denied his state habeas petition on August 18, 2004.  Petitioner's appeal to the

11   California Supreme Court was denied on February 2, 2005 without discussion.

12   Petitioner filed his original federal petition for writ of habeas corpus along with exhibits

13   in this Court in May 2005.  Subsequently, Petitioner amended his federal habeas petition on June

14   8, 2005.

15   IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

16   An application for writ of habeas corpus by a person in custody under judgment of a state

17   court can only be granted for violations of the Constitution or laws of the United States.  See 28

18   U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

19   Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

20   Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

21   and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

22   320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

23   decided on the merits in the state court proceedings unless the state court's adjudication of the

24   claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

25   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

26   resulted in a decision that was based on an unreasonable determination of the facts in light of the

5

1  evidence presented in state court.  See 28 U.S.C. 2254(d).

2      If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

3  court must conduct a *de novo* review of a petitioner's habeas claims.  See Delgadillo v.

4  Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  Additionally, if a state court reaches a decision on

5  the merits but provides no reasoning to support its conclusion, a federal habeas court

6  independently reviews the record to determine whether the state court clearly erred in its

7  application of Supreme Court law.  See Larson v. Palmateer, 515 F.3d 1057, 1062 (9th Cir.

8  2010).

9      As a threshold matter, this Court must "first decide what constitutes 'clearly established

10  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrande,

11  538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law'

12  under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court

13  at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable

14  application clause, a federal habeas court making the unreasonable application inquiry should ask

15  whether the state court's application of clearly established federal law was "objectively

16  unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may

17  not issue the writ simply because the court concludes in its independent judgment that the

18  relevant state court decision applied clearly established federal law erroneously or incorrectly.

19  Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

20  law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

21  determining whether a state court decision is an objectively unreasonable application of clearly

22  established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only

23  the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

24  applied, we may look for guidance to circuit precedents.").

25      The first step in applying AEDPA's standards is to "identify the state court decision that

26  is appropriate for our review."  See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).

6

1  When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

2  last reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  The state

3  courts provided no reasoning to support the denial of Petitioner's Claims.  Thus, the record will

4  be independently reviewed.  See Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000).

5                    V.  JURISDICTION AND MOOTNESS

6          Jurisdiction must be established before reaching the merits of Petitioner's Claims.

7  "[F]ederal courts have jurisdiction to consider a habeas petition only if the petitioner is 'in

8  custody' under the conviction or sentence under attack at the time his petition is filed."  Fowler v.

9  Sacramento County Sheriff's Dep't, 421 F.3d 1027, 1033 n.5 (9th Cir. 2005) (internal quotation

10  marks and citations omitted).  "'A probationary term is sufficient custody to confer [this]

11  jurisdiction.'"  Id. (quoting United States v. Spawr Optical Research, Inc., 864 F.2d 1467, 1470

12  (9th Cir. 1988)).  Petitioner was on probation at the time he filed this federal habeas petition.

13  Thus, jurisdiction is established.  See Chaker v. Crogan, 428 F.3d 1215, 1219 (9th Cir. 2005).

14          Furthermore, even though Petitioner's three-year probationary term has expired, this does

15  not moot his federal habeas petition under these circumstances.  In Spencer v. Kemma, 521

16  U.S.1, 7-14 (1998) the Supreme Court held that a petitioner's release from custody did not offend

17  Article III's "case or controversy" requirement so long as it appears that the petitioner could

18  suffer adverse collateral consequences as a result of the conviction.  There is a presumption that

19  Petitioner's criminal convictions carry with them collateral consequences.  See, e.g., Chaker, 428

20  F.3d at 1219; Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1994), overruled on other grounds

21  by 28 U.S.C. § 2254©.  As the instant federal habeas petition is not moot, the merits of

22  Petitioner's Claims can be analyzed.

23                  VI. PETITIONER'S CLAIMS FOR REVIEW

24      A.  Claim I

25          In Claim I, Petitioner asserts his conviction under § 148(a)(1) was unconstitutional

26  because the noise ordinance that Carella was enforcing, § 12.9 of Fairfield's Municipal Code, is

                                7

1  unconstitutionally overly broad.  Thus, he claims that Carella was not in the performance of his

2  duties when he was enforcing § 12.9.  The parties agree that the relevant section of § 12.9 at the

3  time of Petitioner's arrest stated that "any musical instrument or any device, machine, apparatus,

4  or instrument for intensification or amplification of the human voice or any sound or noise in

5  such a manner that persons owning, using or occupying property in the neighborhood are

6  disturbed."  (Compare Pet'r's Am. Pet. at p. 37 with Resp't's Answer at p. 22 n.4.)

7       "Whether an officer is authorized to make an arrest ordinarily depends, in the first

8  instance, on state law."  Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) (citing Ker v. California,

9  374 U.S. 23, 37 (1963); Johnson v. United States, 333 U.S. 10, 15 and n.5 (1948)).  In California,

10 the elements of a Section 148(a)(1) violation are:  "(1) the defendant willfully resisted, delayed,

11 or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her

12 duties, and (3) the defendant knew or reasonably should have known that the other person was a

13 peace officer engaged in the performance of his or her duties."  Smith v. City of Hemet, 394 F.3d

14 689, 695 (9th Cir. 2005) (internal quotation marks and citation omitted).  However, "[i]n

15 California, the lawfulness of the officer's conduct is an essential element of the offense of

16 resisting, delaying, or obstructing a peace officer."  Id.  Petitioner asserts that Carella could not

17 have been in the performance of his duties at the time of the § 148(a)(1) arrest because the noise

18 ordinance violates the First Amendment to the United States Constitution.  For the following

19 reasons, the constitutionality of the noise ordinance need not be analyzed to decide this Claim.

20      In DeFillippo, 443 U.S. at 33, the United States Supreme Court analyzed "whether an

21 arrest made in good-faith reliance on an ordinance, which at the time had not been declared

22 unconstitutional, is valid regardless of a subsequent judicial determination of its

23 unconstitutionality."  In that case, the Detroit City Code provided that a police officer could stop

24 and question an individual if he had reasonable cause to believe the behavior warranted further

25 investigation for criminal activity.  See id.  Furthermore, the Detroit City Council made it

26 unlawful for any person stopped pursuant to that section to refuse to identify himself and produce

8

evidence of his identify.  See id.  The defendant in DeFillippo refused to identify himself at one of these stops.  He was arrested and taken into custody where marijuana and another controlled substance (phencyclidine) were found on his person.  See id. at 34.  The defendant was charged with possession of a controlled substance and he moved to suppress the evidence.  See id.  The Michigan Court of Appeals found that the Detroit ordinance was unconstitutionally vague and that since the defendant had been arrested for violating that ordinance, the arrest and the search were invalid.  See id.

On certiorari to the United States Supreme Court, the Court reiterated that "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense."  Id. at 36 (citations omitted). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."  Id.  Ultimately, the United States Supreme Court determined that "the subsequently determined invalidity of the Detroit ordinance on vagueness grounds does not undermine the validity of the arrest made for violation of that ordinance."  Id. at 40.  The Court found that the officer had probable cause to arrest the defendant for violating the Detroit ordinance.  The Court then explained that:

> [a]t that time, of course, there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance.  A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional.  [¶]  Police are charged to enforce laws until and unless they are declared unconstitutional.  The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality - with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.  Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

Id. at 37-38.

1    Petitioner argues Carella was not acting in the performance of his duties when he arrested

2  him pursuant to § 148(a)(1) because the noise ordinance is unconstitutional.  The municipal

3  ordinance at issue in this case has not been held to be unconstitutional.  Additionally, the

4  Petitioner was not convicted of the crime he alleges is unconstitutional.  Even if the noise

5  ordinance was subsequently declared to be unconstitutional, that would not affect whether

6  Carella was in the performance of his duties for enforcing the noise ordinance which was legal at

7  the time of Petitioner's arrest.  The Supreme Court's decision in DeFillippo illustrates that it is

8  unnecessary to reach the issue of the constitutionality of the statute under Petitioner's argument

9  in this Claim.[6]  The constitutionality of § 12.9 does not affect the validity Carella's actions in

10  arresting Petitioner pursuant to § 148(a)(1) as the ordinance was legal at the time of the arrest.

11    The cases relied on by Petitioner are distinguishable.  Petitioner first relies on Saia v.

12  New York, 334 U.S. 558 (1948) in arguing that the noise ordinance is unconstitutional.  In Saia,

13  the defendant was convicted of violating a local sound ordinance which forbid the use of sound

14  amplification devices except with permission of the police chief.  See id. at 558.  Ultimately, the

15  Supreme Court found that the local ordinance was unconstitutional on its face because it

16  established a previous restraint on the right of free speech in violation of the First Amendment.

17  See id. at 559-60.  Unlike Saia, Petitioner was not tried (let alone convicted) of violating the

18  noise ordinance.  DeFillippo makes clear that the constitutionality of § 12.9 does not affect

19  whether Carella was in the performance of his duties when he arrested Petitioner under §

20  148(a)(1).

21    Next, Petitioner cites to In re Brown, 9 Cal. 3d 612, 108 Cal. Rptr. 465, 510 P.2d 1017

22

23    [6] Petitioner does not assert that Carella lacked probable cause to arrest Petitioner for
violating the noise ordinance, nor could he in these proceedings for two reasons.  As explained in
24  infra Part VI.C, a claim that an arrest lacked probable cause is not cognizable in federal habeas
proceedings.  Furthermore, as previously noted, Petitioner was not convicted of violating § 12.9.
25  Therefore, he is not "in custody" for violating the ordinance.  See 28 U.S.C. § 2254(a)("[A]
district court shall entertain an application for a writ of habeas corpus in behalf of a person in
26  custody pursuant to the judgment of a State court . . .") (emphasis added).

(1973), and asserts that it "undermines and calls into question the continuing viability of" the noise ordinance. (Pet'r's Am. Pet. at p. 38.) In Brown, the California Supreme Court analyzed convictions under Section 415 of California's Penal Code for disturbing the peace which stated that: "[e]very person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct . . . is guilty of a misdemeanor." 9 Cal. 3d at 616, 108 Cal. Rptr. 465, 510 P.2d 1017. Ultimately, the California Supreme Court determined that:

> [t]he statute, however, cannot be interpreted consistent with the First Amendment and traditional views as making criminal all loud shouting or cheering which disturbs and is intended to disturb persons. When the word "noise" in the statute is properly construed consistent with the First Amendment and traditional views, it encompasses communications made in a loud manner only when there is a clear and present danger of violence or when the communication is not intended as such but is merely a guise to disturb persons.

Id. at 619, 108 Cal. Rptr. 465, 510 P.2d 1017 (footnote omitted). Petitioner's reliance on Brown is misplaced for the same reasons as is his reliance on Saia.[7] Had Petitioner been convicted of violating § 12.9 then the constitutionality of the local ordinance would be an issue in this federal habeas proceeding. However, DeFillippo illustrates that the constitutionality of § 12.9 is not implicated in this case regarding whether Carella was in the performance of his duties when he arrested Petitioner for violating § 148(a)(1) (as well as § 647c). For these reasons, Petitioner is not entitled to federal habeas relief on this Claim.

B.      Claim II

In Claim II, Petitioner asserts that Carella was not in the performance of his duties at the time of his arrest since Carella's grabbing of the microphone constituted a prior restraint on Petitioner's First Amendment rights. As with Claim I, Petitioner bases this Claim on the unconstitutionality of the noise ordinance. However, this Claim does not warrant federal habeas relief for the reasons as outlined in supra Part VI.A.

----

[7] For similar reasons, Petitioner's reliance on Shuttlesworth v. City of Birmingham, 394 U.S. 147 (1969) also fails to support this Claim.

C.      Claim III

In Claim III, Petitioner makes three distinct separate arguments.  First, Petitioner again relies on his theory that § 12.9 is unconstitutional so that Carella was not in the performance of his duties when he arrested Petitioner.  Thus, Petitioner argues that "there was no competent evidence to support either conviction."  (Pet'r's Am. Pet. at p. 45-46.)  For the reasons outlined in supra Part VI.A, this argument lacks merit.

Next, Petitioner argues that Carella lacked probable cause to arrest him.  Federal habeas relief may be granted "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  It is established that a criminal conviction will not be set aside because the defendant was unlawfully brought before the court.  See United States v. Crews, 445 U.S. 463, 474 (1980) ("An illegal arrest without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction . . . . [Defendant] is not himself a suppressible 'fruit' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct."); Myers v. Rhay, 577 F.2d 504, 507 (9th Cir. 1978) ("It is well settled that illegal arrest or detention of a suspect does not void a subsequent conviction.  The proper time to challenge the probable cause underlying an arrest is prior to the prosecution of the case, while the illegal detention is in progress.") (citations omitted); see also Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986).  Here, Petitioner challenges his arrest on the grounds that Carella lacked probable cause for the arrest.  He does not argue that he was not afforded a full and fair opportunity to litigate this claim in state court.  See, e.g., Stone v. Powell, 428 U.S. 465, 494 (1976).  Thus, Petitioner cannot obtain federal habeas relief under these circumstances by arguing that the police lacked probable cause for his arrest.

Third, Petitioner argues that the prosecution failed to introduce evidence of malice to support his § 647c conviction.  The Due Process Clause of the Fourteenth Amendment "protects

the accused against conviction except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364

(1970). There is sufficient evidence to support a conviction, if, "after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

(1979). "[T]he dispositive question under Jackson is 'whether the record evidence could

reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d

978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). A petitioner for a federal writ of

habeas corpus "faces a heavy burden when challenging the sufficiency of the evidence used to

obtain a state conviction on federal due process grounds." Juan H. V. Allen, 408 F.3d 1262,

1274 (9th Cir. 2005).

Upon reviewing the record in the light most favorable to the prosecution, Petitioner's

argument that there was insufficient evidence to support his § 647c conviction due to a lack of

malice does not warrant federal habeas relief. A federal habeas court determines sufficiency of

the evidence in reference to the substantive elements of the criminal offense as defined by state

law. See Jackson, 443 U.S. at 324 n.16. As noted in supra note 4, California Penal Code § 647c

states:

> Every person who willfully and maliciously obstructs the free
> movement of any person on any street, sidewalk, or other public
> place or or on or in any place open to the public is guilty of a
> misdemeanor.
>
> Nothing in this section affects the power of a county or a city to
> regulate conduct upon a street, sidewalk, or other public place or
> on or in a place open to the public.

The trial court instructed the jury that "[t]he word maliciously means a wish to vex, annoy or

injure another person or an intent to do a wrongful act." (Reporter's Tr. at p. 305.) Ms. Acosta

testified at trial that as she was driving her truck into the School parking lot, Petitioner stopped in

front of her car, "and then he laid down on the sidewalk in front of me in the entry. I couldn't get

13

1   in the parking lot." (Id. at p. 80.)  Ms. Acosta testified that Petitioner laid down in front of her

2   truck for several minutes and that her truck was blocking traffic.  (See id. at p. 83-84.)  Ms.

3   Acosta also stated that she could not back up either because of the oncoming traffic.  (See id. at

4   p. 89.)  Additionally, another witness traveling on the road that leads to the School testified that

5   he saw Petitioner in front of Acosta's truck and that it blocked traffic.  (See id. at p. 101.)

6   Viewing this evidence in the light most favorable to the prosecution, Petitioner's insufficiency

7   claim as to his Section 647c conviction lacks merit.  There was sufficient evidence in the record

8   when viewed in the light most favorable to the prosecution such that any rational trier of fact

9   could have found that Petitioner's actions satisfied the definition of malice.  The prosecution

10  presented evidence that Petitioner acted with a wish to vex, annoy, or injure another person or

11  acted with an intent to do a wrongful act when he blocked Ms. Acosta's vehicle which caused a

12  block in traffic along the road near the School.  For the foregoing reasons, Petitioner's arguments

13  in Claim III do not warrant federal habeas relief.

14          D.      Claim IV

15          In Claim IV, Petitioner makes several arguments that the trial court erred in failing to give

16  several requested jury instructions.  He argues that the trial court violated his "right to present a

17  defense to a fair trial by refusing to instruct the jury on [his] defense that Officer Carella was not

18  in performance of his duties when he was violating [his] First Amendment rights."  (Pet'r's Am.

19  Pet. at p. 48.)

20          Claims based on instructional error under state law are not cognizable on federal habeas

21  review.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459

22  U.S. 422, 438 n.6 (1983)); see also Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).

23  To receive federal habeas relief for an error in the jury instructions, Petitioner must show that the

24  error so infected the entire trial that the resulting conviction violates due process.  See Estelle,

25  502 U.S. at 72; see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  "Due process requires

26  that criminal prosecutions comport with prevailing notions of fundamental fairness and that

criminal defendants be afforded a meaningful opportunity to present a complete defense." Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006). "A defendant is entitled to an instruction on his theory of the case if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009).

"'Failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable.'" Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009), cert. denied, 130 S.Ct. 2103 (2010) (citing Beardslee v. Woodford, 358 F.3d 560, 577 (9th Cir. 2004)). In order to obtain federal habeas relief on this Claim, Petitioner "must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict." Id. (internal quotation marks and citations omitted). "A substantial and injurious effect means a reasonable probability that the jury would have arrived at a different verdict had the instruction been given." Id. (internal quotation marks and citation omitted). In analyzing whether the Petitioner has suffered prejudice, two factors are considered: "(1) the weight of the evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." Id. (citing Beardslee, 358 F.3d at 578). In this case, the burden on Petitioner is especially heavy where the alleged error involves the failure to give an instruction. See id. (quoting Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006)). An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of the law. See Henderson, 431 U.S. at 155 (1977); see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

Petitioner asserts that the trial court erred by refusing to give several proposed instructions at trial; specifically:

Proposed Special Instruction # 1
It is no crime to non-violently resist the unlawful action of a police officer. Thus, if you find that a police officer violated any statutory or constitutional law during the detention of Defendant then you may find that the officer was not engaged in the performance of his

duty and you may find the Defendant not guilty.

Proposed Special Instruction # 2:
All citizens possess the right under the First Amendment to verbally criticize and challenge an officer without such criticism and challenge being a violation of the charged crime.

Proposed Special Instruction # 3:
A citizen has a constitutional right to challenge or criticize a police officer. Such criticism or challenging does not constitute resisting, delaying or obstructing a police officer.

Proposed Special Instruction # 4:
When a citizen ignores, verbally opposes, or challenges a police officer's order to clear a sidewalk there is no violation of Penal Code 647c because the citizen has not maliciously blocked a sidewalk by mere opposition to a police officer's instructions. Moreover, even if the statute could be so applied, it would run afoul of the First Amendment because no State or municipality can require all who wish to exercise free speech to seek prior permission from the police for their prior approval before they begin their protest.

Proposed Special Instruction # 5:
The right to picket peacefully and truthfully is one of organized labor's lawful means of advertising its grievances to the public, and as such is guaranteed by the Constitution as an incident of freedom of speech.
If you believe that the defendant was engaged in constitutionally protected free speech and was therefore not acting maliciously, you must find him not guilty for the crime for which he is charged.

Proposed Forcite Instruction F 16.102:

When a citizen verbally opposes or challenges police conduct there is no violation of Penal Code section 148 because the citizen has not "resisted, delayed, or obstructed" the police. Moreover, even if the statute could be so applied, it would run afoul of the First Amendment. Even fighting words, when uttered to a policeman are constitutionally protected because it is not contemplated that a peace officer will react violently.

(Pet'r's Pet. Ex. G.) Petitioner argues that the proposed jury instructions were necessary to

Petitioner's defense that Carella was not engaged in the performance of his duties due to the

unconstitutionality of § 12.9. (See Pet'r's Am. Pet. at p. 49.) For the reasons outlined in supra

Part VI.A, the constitutionality of § 12.9 was not an issue in this case as Carella's actions were

lawful because the noise ordinance was legal at the time. Thus, this alleviated the need for

16

Petitioner's proposed instructions regarding Carella's purported lack of engagement in the performance of his duties.

Next, Petitioner argues that the trial court committed constitutional error in failing to instruct the jury using special instructions #2 and #3.  Petitioner relies principally on People v. Quiroga, 16 Cal. App. 4th 961, 20 Cal. Rptr. 446 (1993) to support these two instructions.  In Quiroga, the California Supreme Court recited the following facts:

> The prosecution rested its case chiefly on the testimony of Greg Stefani, a Ukiah Police Department officer.  At about 2:30 a.m. on May 1, 1992, Officer Stefani responded to a report of a noisy party in an apartment complex near Ukiah.  After waiting for two other officers to join him, he knocked, and a woman opened the door. He then saw another woman sitting on the floor as a man handed her "what appeared to . . . be a marijuana cigarette."  He could "smell the odor of marijuana."  Walking into the room, he asked for the marijuana cigarette.

> At this point, appellant stood up from a couch and started to walk into the hallway.  "Mostly for safety reasons," Officer Stefani ordered him to sit back down on the couch.  Appellant argued before complying with the order.  In Stefani's words, "Mr. Quiroga was very uncooperative telling me that I needed a reason to be in the house, to get out of the house, that . . . I needed a search warrant to come into the house."  As appellant argued, Stefani noticed that he had his hands in his pocket and appeared to be "hanging onto something in his pocket . . . ."  He started "to pull his hand out" and then "put it back, and seemed very nervous." "Finally," appellant sat down and Officer Stefani directed his attention to the suspect he had seen with the marijuana cigarette.

> Before long, appellant again caught Officer Stefani's attention. Stefani testified, "I looked over at Mr. Quiroga again.  He was still telling us to leave the apartment and that we had no legal right to be there.  And I saw with his right hand he was reaching between the couch cushions and the arm of the couch . . . .  He seemed to be trying to hide his movements from me.  As I would look at him he would pull his hand out, put it down . . . ."  Stefani ordered appellant to put his hands on his lap.  Again he was "very uncooperative" but "finally" obeyed the order.  Officer Stefani still didn't "feel comfortable" and ordered appellant to stand up.  After refusing several times, he stood up as Officer Stefani "pulled on his arm" and went to a corner of the room where another officer could observe him.

> Officer Stefani then looked under the cushion of the couch where appellant "had been reaching" and found a clear plastic bag with a

17

1  white powder.  Chemical analysis later showed that it contained .92
2  grams of cocaine.  Although appellant denied any knowledge of the
   item, Officer Stefani placed him under arrest and took him to the
3  police department and then the county jail.

4  Id. at 964-65, 20 Cal. Rptr. 2d 446.  In analyzing the defendant's conviction under § 148 for his

5  pre-arrest actions, the California Supreme Court explained:

6        We find nothing in appellant's conduct before his arrest that might
7        justify a charge of violating Penal Code section 148.  It is true that
       he complied slowly with Officer Stefani's orders, but it surely
8        cannot be supposed that Penal Code section 148 criminalizes a
       person's failure to respond with alacrity to police orders.  Morever,
9        appellant possessed the right under the First Amendment to dispute
       Officer Stefani's actions.  "[T]he First Amendment protects a
10       significant amount of verbal criticism and challenge directed at
       police officers."  (Houston v. Hill (1987) 482 U.S. 451, 461, 107
11       S.Ct. 2502, 2509, 96 L.Ed.2d 398.)  Indeed, "[t]he freedom of
       individuals verbally to oppose or challenge police action without
12       thereby risking arrest is one of the principal characteristics by
       which we distinguish a free nation from a police state." (Id. at pp.
13       462-463, 107 S.Ct. at 2510.)  While the police may resent having
       abusive language "directed at them, they may not exercise the
14       awesome power at their disposal to punish individuals for conduct
       that is not merely lawful, but protected by the First Amendment."
15       (Duran v. City of Douglas, Ariz. (9th Cir. 1990) 904 F.2d 1372,
       1378.)

16  Id. at 966, 20 Cal. Rptr. 2d 446.  Unlike the defendant in Quiroga, Petitioner's defiance of

17  Carella was quite different.  Instead of verbally arguing with a peace officer in a private residence

18  as the defendant did in Quiroga, here Petitioner used the megaphone in violation of § 12.9 in

19  Carella's estimation.  He then laid down on the sidewalk/road after the megaphone was taken by

20  Carella which constituted a violation of § 647c in the police's estimation.  (See Reporter's Tr. at

21  p. 27.)  Petitioner refused to comply with the police's requests to get up from the sidewalk/road.

22  The factual scenario in Quiroga was quite different than the one that gave rise to Petitioner's

23  convictions.  The refusal of the trial court to instruct the jury using special instructions # 2 and #

24  3 did not infringe on Petitioner's constitutional rights.  Upon reviewing the entire charge to the

25  jury, the trial court's rejection of special instructions # 2 and # 3 did not so infect the trial that the

26  resulting convictions violated Petitioner's due process rights.

                                          18

1      Finally, Petitioner argues that the trial court's rejection of special instructions # 4 and # 5

2  "prevented the jury from considering [his] defense that he was not acting with malice when he

3  delayed the entry of Ms. Acosta's truck into the parking lot.  This refusal deprived [Petitioner] of

4  his Fifth Amendment due process right to a fair trial and his Sixth Amendment right to present a

5  defense." (Pet'r's Am. Pet. at p. 51.)  The trial court specifically instructed the jury that

6  "'maliciously' means a wish to vex, annoy or injury another person or an intent to do a wrongful

7  act." (Reporter's Tr. at p. 305.)  Thus, the jury was not prevented from considering whether

8  Petitioner acted with malice to support the § 647c conviction.  Accordingly, Petitioner's

9  arguments in Claim IV do not warrant granting federal habeas relief.

10      E.      Claim V

11      Next, Petitioner asserts that the trial court erred in rejecting Petitioner's attempt to have

12  the jury instructed on the entire § 12.9 ordinance.  Petitioner proposed the following instruction

13  at trial:

14          No person shall do, cause or suffer or permit to be done on any
            premises owned, occupied, or controlled by such person, any of the
15          following acts:

16          1.  Auto body repairs.  Repair any auto body or fender unless
            within completely enclosed building an the noises from such
17          repairs are reasonably confined to such building.

18          2.  Building operations, etc. at certain hours.  Operate or use in
            connection with building operations between the hours of 10:00
19          p.m. and 7:00 a.m. any piledriver, steam shovel, pneumatic
            hammer, derrick, steam or electric hoist, power-driven saw, or any
20          other tool or apparatus, the use of which is attended by loud or
            unusual noises, except by written permission of the building
21          inspector.

22          3.  Musical instruments, sound amplifiers and sounds in general.
            Use or operate any musical instrument or any device, machine,
23          apparatus, or instrument for intensification or amplification of the
            human voice or any sound or noise in such manner that persons
24          owning, using, or occupying property in the neighborhood are
            disturbed.

25

26  (Pet'r's Pet., Ex. G.)  The trial court instructed the jury only on part three of the ordinance.

                                          19

Petitioner asserts that by refusing to instruct the jury on the full ordinance, the trial court

prevented Petitioner from presenting a defense regarding the contradiction in the statute which

allowed for the use of a jackhammer during the hours of 7:00 a.m. to 10:00 p.m. but not the use

of a megaphone.  (See Pet'r's Am. Pet. at p. 52-53.)  Petitioner argues that by rejecting the

requested instruction, the trial court denied him the right to present his defense that Carella was

not in the performance of his duties when he arrested Petitioner.

Upon reviewing the challenged instruction in the context of the overall charge to the jury,

the trial court's rejection of instructing the jury on the rest of the noise ordinance did not so infect

the entire trial resulting in convictions that violate due process.  The trial court instructed the jury

on the elements of the crimes for which he was charged (specifically § 148(a)(1) and § 647c of

the California Penal Code).  Additionally, the trial court instructed the jury on the relevant

portion of the local noise ordinance that Carella believed was being violated by Petitioner by

using the megaphone.  Petitioner's due process rights were not violated when the trial court

rejecting proposed jury instructions on irrelevant portions of the noise ordinance.  Those

instructions were not necessary under these circumstances and certainly did not amount to a

violation of Petitioner's rights sufficient to warrant federal habeas relief.

F.  Claim VI

In Claim VI, Petitioner asserts that the trial court violated his Sixth Amendment right to

confront Ms. Acosta on her bias against him.  Specifically, defense counsel wanted to question

Ms. Acosta's "relationship to the school and to the union in which [Petitioner] was a member."

(Pet'r's Am. Pet. at p. 55.)  Petitioner argues that "the trial court's refusal to allow this line of

questioning was prejudicial error that warrants that the conviction be vacated."  (Id.)

The Confrontation Clause of the Sixth Amendment provides a criminal defendant with a

right to face those who testify against him and a right to cross-examine that witness.  See

Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987).  "[T]he Confrontation Clause guarantees an

opportunity for effective cross-examination, not cross-examination that is effective in whatever

1   way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20

2   (1985) (per curiam).  It includes the right to cross-examine adverse witnesses to attack their

3   general credibility or show their possible bias or self-interest in testifying.  See Olden v.

4   Kentucky, 488 U.S. 227, 231 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986);

5   Davis v. Alaska, 415 U.S. 308, 316 (1973); United States v. Larson, 460 F.3d 1200, 1206 (9th

6   Cir. 2006).  A Confrontation Clause violation occurs where the defendant is prevented from

7   investigating "a prototypical form of bias" if "[a] reasonable jury might have received a

8   significantly different impression of [the witness'] credibility had respondent's counsel been

9   permitted to pursue his proposed line of cross-examination."  Van Arsdall, 475 U.S. at 680.

10  However, "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned"

11  and may impose limitations on cross-examination that are "reasonable . . . based on concerns

12  about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or

13  interrogation that is repetitive or only marginally relevant."  Id. at 679.  The Ninth Circuit has

14  enunciated a three-part test in analyzing whether the trial court violated the Confrontation Clause

15  by excluding evidence; specifically:  (1) whether the excluded evidence was relevant; (2) whether

16  there were other legitimate interests outweighing the defendant's interest in presenting the

17  evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to

18  assess the credibility of the witness.  See Larson, 460 F.3d at 1207.

19      The improper denial of a defendant's opportunity to impeach a witness for bias is subject

20  to a harmless-error analysis.  See Van Arsdall, 475 U.S. at 684 (stating that Confrontation Clause

21  errors are subject to Chapman v. California, 386 U.S. 18 (1967) analysis).  Petitioner is not

22  entitled to federal habeas relief unless he can establish that the trial court's error "had substantial

23  and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507

24  U.S. 619, 637 (1993); see also Forn v. Hornung, 343 F.3d 990, 999 (9th Cir. 2003) (finding that

25  Confrontation Clause error did not have a "substantial and injurious" effect on the verdict and

26  that the error was therefore harmless).  In determining whether the error was harmless depends

1    on a host of factors which include:  (1) the importance of the witness' testimony in the

2    prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of

3    evidence corroborating or contradicting the testimony of the witness on material points; (4) the

4    extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's

5    case.  See Van Arsdall, 475 U.S. at 684.

6        Even assuming *arguendo* that the trial court erred in not allowing Petitioner to question

7    Ms. Acosta about her role at the School and/or her union membership, the error was harmless.

8    For example, Ms. Acosta's testimony concerning Petitioner's actions in and around her car and

9    the entrance to the school was corroborated by the testimony of Mr. DeVoto and Ms.  Lawton.

10   Petitioner was also able to cross-examine Ms. Acosta regarding the full circumstances of the

11   incident that occurred with Petitioner on June 14, 2001.  The prosecution presented several

12   witnesses in support of its case.  Any purported error in the trial court's failure to allow defense

13   counsel to inquire into any purported bias of Ms. Acosta was harmless.  Petitioner is not entitled

14   to federal habeas relief on this Claim.

15       G.  Claim VII

16       In his final Claim, Petitioner asserts that the trial court erred when it refused to allow him

17   to impeach Carella through the testimony of Suzanne Carlson.  He asserts that he offered a copy

18   of Ms. Carlson's complaint that she made to the Fairfield Police Department against Carella for

19   fabricating a police report against her.  (See Reporter's Tr. at p. 56; Pet'r's Traverse at p. 22-23.)

20   Petitioner alleges that the trial court violated his Sixth Amendment right to present a defense and

21   for compulsory process when it refused to allow Ms. Carlson to testify.  He argues that:

22           The refusal to permit [Petitioner] to present Ms. Carlson's
             testimony constituted an abject violation of his right under the state
23           and federal Constitutions to present a defense to Count One;
             therefore, Mr. Wilson respectfully urges this Court to vacate Count
24           One based upon the trial court's refusal to admit the testimony of
             Ms. Carlson.
25

26   (Pet'r's Am. Pet. at p. 58.)

22

1    Criminal defendants have a constitutional right to present relevant evidence in their own

2  defense.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  This right comes from both the right

3  to due process under the Fourteenth Amendment, see Chambers v. Mississippi, 410 U.S.284, 294

4  (1973), and the right "to have compulsory process for obtaining witnesses in his favor" provided

5  by the Sixth Amendment.  See Washington v. Texas, 388 U.S. 14, 23 (1967).  Nevertheless, "[a]

6  defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable

7  restrictions," such as evidentiary and procedural rules.  See United States v. Scheffer, 523 U.S.

8  303, 308 (1998).  "[S]tate and federal rulemakers have broad latitude under the Constitution to

9  establish rules excluding evidence from criminal trials."  Id.  The Supreme Court approves of

10  "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative

11  value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or

12  potential to mislead the jury."  Holmes v. South Carolina, 547 U.S. 319, 326 (2006).  Evidentiary

13  rules do not violate a defendant's constitutional rights unless they "infring[e] upon a weighty

14  interest of the accused and are arbitrary or disproportionate to the purposes they are designed to

15  serve."  Id. at 324 (internal quotation marks and citation omitted); see also Scheffer, 523 U.S. at

16  315 (determining that the exclusion of evidence pursuant to a state evidentiary rule is

17  unconstitutional only where it "significantly undermined fundamental elements of the accused

18  defense").  Generally, it takes "unusually compelling circumstances . . . to outweigh the strong

19  state interest in administration of its trials."  Perry v. Rushen, 713 F.2d 1447, 1452 (9th Cir.

20  1983).  The Supreme Court has expressed its:

21         traditional reluctance to imposed constitutional constraints on
           ordinary evidentiary rulings by state trial courts.  In any given
22         criminal case the trial judge is called upon to make dozens,
           sometimes hundreds of decisions concerning the admissibility of
23         evidence . . . . [T]he Constitution leaves to the judges who must
           make these decisions wide latitude to exclude evidence that is
24         repetitive . . . only marginally relevant or poses an undue risk of
           harassment, prejudice, [or] confusion of the issues.
25

26  Crane, 476 U.S. at 689-90 (internal quotation marks omitted).  Furthermore, even if the exclusion

1   of evidence amounts to constitutional error, the erroneous exclusion of evidence must have had a

2   "substantial and injurious effect" on the verdict in order to justify federal habeas relief."  Brecht,

3   507 U.S. at 623.  Thus, even if there was constitutional error, Petitioner must show that the error

4   resulted in actual prejudice.  See id.

5        Defense counsel sought to have Ms. Carlson testify at trial.  He argued to the trial court

6   that:

7            I have under subpoena Suzanne Carlson who is a teacher who
             made a complaint against Officer Carella for fabricating a police
8            report.  She is under subpoena and willing to testify.  [¶  I have a
             copy of her complaint that she made to the Fairfield Police
9            Department for fabrication of police reports and lying under
             oath.  [¶] I believe that evidence is admissible, impeachment
10           evidence . . . evidence is misdemeanor conduct of moral turpitude
             not amounting to a conviction . . . . [¶]  I think it's up to the jury to
11           decide who is telling the truth, whether it's Officer Carella or Miss
             Carlson.

12

13   (Reporter's Tr. at p. 10.)  The trial court denied Carlson's testimony and stated:  "[t]hat appears

14   to me you're bringing in an entirely different issue.  My ruling is based on 352 of the Evidence

15   Code."  (Id.)  Section 352 of California's Evidence Code states that "[t]he court in its discretion

16   may exclude evidence if its probative value is substantially outweighed by the probability that its

17   admission will (a) necessitate undue consumption of time or (b) create a substantial danger of

18   undue prejudice, of confusing of the issues, or of misleading the jury."

19        Upon reviewing the record, Petitioner is not entitled to federal habeas relief on this

20   Claim.  The trial court was well within its authority to prevent testimony so as to not confuse the

21   jury with the ancillary issue of the purported arrest of Ms. Carlson and the corresponding police

22   report.  The only evidence Petitioner cited regarding whether Carella did in fact lie in a police

23   report concerning Ms. Carlson was her complaint.  Furthermore, and perhaps even more

24   importantly, even if it was constitutional error to prevent the testimony of Ms. Carlson, the

25   exclusion of her evidence did not have a substantial or injurious effect on the verdict as Petitioner

26   cannot show prejudice.  The prosecution supported Carella's testimony through many witnesses,

24

including, but not limited to Ms. Lawton and another officer, Paul Bockrath.  Petitioner was not prejudiced by the refusal of the trial court to allow Ms. Carlson to testify.

## VII.  REQUEST FOR AN EVIDENTIARY HEARING

Finally, Petitioner requests an evidentiary hearing concerning his claims.  Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."  Earp, 431 F.3d at 1167 (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

In this case, an evidentiary hearing is not warranted.  Petitioner failed to demonstrate that he has a colorable claim for federal habeas relief for the reasons stated in Parts VI.A-G.

## VIII.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Petitioner's request for oral argument is DENIED; and

2.  Petitioner's request for an evidentiary hearing is DENIED.

IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  October 7, 2010

_____
TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE